To the fourth case this morning, Asenic v. Sessions. Good morning, and may it please the court, my name is John Ostojic, I'm here on behalf of the appellant, Jovo Asentic. Your honors, there's two central issues in this case. One relates to removability, and the other one relates to the discretion as to whether or not waivers should have been applied to Mr. Asentic. If the court looks at the record on a whole, you'll find that the immigration judge as well as the Board of Immigration Appeals erred, as a matter of law, on both instances. With respect to the first issue of removability, the immigration judge and the Board of Appeals were required to look at four things to determine whether Mr. Asentic was removable. There had to have been a misrepresentation. In this case we know, and I'm sure you've reviewed the transcripts and the briefs, it was misrepresentation by omission. What's critical here is that in fact that omission was done by a government agent, a government official, a government employee, as referenced in Mr. Gardner's testimony, the expert for the government. So it was an omission induced by the government employee. Mr. Asentic, when he came in to fill out his I-590 form, was told by this government employee to omit the fact that he was a member of an army of Republic of Srpska. Secondly, when we look at the next issue, whether it was voluntary, how can the immigration judge and the Board of Appeals say that it was voluntary by Mr. Asentic? In fact, it was neither deliberate, nor voluntary, nor willful on his part. Who is this OMI or whatever the person is you say works as an employee of the government? IOM, and that was the International Office of Migration. The government was never able to identify that person. In fact, critically looking at Mr. Todd Gardner's testimony, he states that there was no formal training of any of these government employees until 2001. Our I-590 application was filed in 2000. He admits and acknowledges that it was just an ad hoc type training, some of which he was involved with prior to 2000. But none of which that he could attest occurred while the interview with Mr. Asentic in this case. The third point that we raise with respect to removability was whether or not this purported omission that was induced by IOM was whether it was material or not. Mr. Gardner, one of the government's experts, as well as their second expert, Mr. McQueen, testified clearly that both and all members of the United States who had anything to do with processing refugees in the former Yugoslavia knew that every single adult male from age 60 to 61, and there's some evidence that it was from age 16 to 81, were mandatorily conscripted to serve in a military, whether it was a Serb military, Croatian military, or the Bosnian Muslim military. So every single person who assisted and determined that people should be considered refugees knew that every male was at one point or another a member of various military groups. So how could that be material? It didn't stop the government from asking further questions. He didn't close the door. In fact, he says he was in Bosnia during that time. He says he's a Bosnian Serb. The next question that relates to removability is whether the record on a whole supports that this omission of military service was the reason why Asantec benefited and received this refugee status and was allowed into this country. A closer look at just the form of the application, the I-590, clearly there were other reasons in which Mr. Asantec was eligible to come to this country. The form on its face, although brief, clearly states that the UNHCR recommended and approved Mr. Asantec. It also states that the IOM organization in their bio and interviews of Mr. Asantec clearly also approved him to come back. So there were other means that Mr. Asantec was allowed in and was vetted through the process. Not just as the government says by this one IOM individual or an INS agent who apparently didn't ask if he was a member of the Serb military from 91 to 95 or 96. We believe it's compelling that the standard here, the government needed to prove clear, unequivocally and convincingly, all the facts in this case. When you look at Mr. Gardner's testimony, specifically at the administrative record 282, he couldn't even address the issue of materiality. He says, I'm saying that it could be material, not that it is. Certainly he does clarify that subsequently in his examination, but that's not unequivocal, in my opinion, that's not clear. In fact, Mr. Todd Gardner clearly states that the fact that Mr. Asantec was a member of the Army of Republic of Serbska was not, and I repeat, was not a disqualifying factor at all. When I tried to cross-examine Mr. Gardner, the court stopped me from finding out, although he had the material before him, whether or not the UNHCR, the United Nations High Commission of Refugees, whether or not they actually confirmed after vetting Mr. Asantec to be a refugee, qualified him to be that, as well as the IOM. The court below, or I should say the immigration judge below, erred. The Board of Immigration Appeals erred in this instance as well. We ask that this court rectify those errors. In this case, Mr. Asantec, not because the UNHCR or the IOM vetted him and found him to be eligible to be a refugee, he himself, by his testimony, that the immigration judge found to be credible, and the Board of Immigration of Appeals didn't dispute that, found him to be credible, he suffered discrimination. He was a victim of the war. The third qualifying factor that would have allowed him to become a refugee, he was from a mixed marriage. A Bosnian Serb, Christian Orthodox, who married a Muslim woman from Bosnia. So both of them are Bosnian, and one's Muslim and the other is Christian, and that's called a mixed marriage? It is, Your Honor. But they were, I guess, validly married, and then his participation in the VRS, is that what it's called? Yes, it is the VRS. Yeah, it was remote, you say. He was 100 miles away and didn't really get into what was going on with the atrocities. That's absolutely correct, but with respect, it's not just what I say, and it's not just what Mr. Asantec says. What's critical here is that the immigration judge and the Board of Appeals ignored what the government's expert, Mr. Mike McQueen, said. Under cross-examination, he expressly said, I have no evidence of involvement, no documentation of it. And from what I could see, Mr. Asantec was not convicted, indicted, any warrants issued for him. He did not participate in any of the atrocities. Now, had he disclosed that and explained his remoteness and all of that, would that have made a difference, do you think? Oh, absolutely, I think it would have. Do you think they would have said that's okay? Because we don't have, at least I don't, I didn't see any record of other people who did or did not claim whatever the membership. You say it's almost mandatory if you live there, so it wasn't an option. And are there a lot of people who didn't get rejected because of that membership when they disclosed it? Yes. I mean, were they rejected because they didn't disclose it? No, I said they did disclose it. I don't know that. And they were admitted, which is what you said. I don't know that, Your Honor. I think the government would know that better. But I know in this case that Mr. Asantec was eligible for at least three reasons. One, obviously, is mixed marriage. Two, the UNHCR agreed and wanted him to become a refugee, and that's the reason he went to apply for refugee status, as well as the IOM interview. The court, or the immigration judge, refused to allow us to have those documents. They made some, and she stopped me during the cross-examination of both Mr. Gardner and Mr. McQueen in trying to list that information. We were able to get from Mr. Gardner, in his testimony, if read properly and UNHCR did allow Mr. Asantech and vetted him and recommended that he become a refugee, as well as the IOM. So we thought we had enough there for the purposes of materiality. The other critical issue, as I said, was with respect to the second point, which is the abuse. I think, not the abuse, I'm sorry, the waiver, whether the court, as a matter of law, failed to give Mr. Asantech this waiver. Now, I know that's a discretionary provision, but I think the court, in this case, after finding the immigration judge, in this case, after finding Mr. Asantech credible, finding that he was a victim of persecution himself and threats and hostilities. This court did not properly weigh the mitigating factors with the negative factors. This court, in fact, what it did was, or the immigration judge and the board of appeals, what they did, in fact, was say, we believe in collective guilt. We believe that if you're of a certain ethnic group, that you're culpable and responsible for all the crimes that happen, despite the fact that you may not have agreed with it, despite the fact that you may not have participated in it, and despite the fact that you had nothing to do with it. Because if you look at their analysis on the waiver issue, both the immigration judge and the BIA state as a factor the atrocities committed by the VRS. How does that relate to Mr. Asantech? I submit that it does not. I believe that they've erred. I know I'm out of time. I did reserve a little extra time for rebuttal. I'll give you two more minutes, sir, in rebuttal. Thank you, Your Honor. Apologize. Good morning. May it please the court, Tiffany Walters will respond to the United States Attorney General. Substantial evidence here supports the agency's finding that Petitioner is removable for willfully misrepresenting material fact, where he deliberately chose not to disclose his service in the Serbian Army during a time and in a place where atrocities occurred. His concealment was material to his refugee application because it prevented a line of inquiry. It prevented that adjudicating officer from questioning him further regarding what he was doing and where he was, and whether or not he could possibly be inadmissible. And precluded them from making that determination close in time and close in place to where those events occurred. That determination should have been made by the INS officer adjudicating the application, not in removal proceedings years later in the United States, where the government has less access to information and evidence than it would have closer in time and place to the atrocities that occurred. Mr. Asantech focuses on the information provided by the International Organization for the Protection of Human Rights and the United Nations, which is a government contractor that was contracted to do front-end work on the applications. I think it's an agency that falls under the United Nations. And they would help the applicants complete the application. They didn't actually adjudicate the applications, though. Those were adjudicated by an INS officer. Yeah, but he was told by a, what was a contract, nevertheless, a worker for the federal government, to not put that on his form. He was told that his application would be denied, which was poor advice. That being said, Mr. Asantech admitted that he knew it was illegal not to disclose that information. And he chose to not disclose it because he didn't want his application to be denied, understandably. But at the same time, those applications- Nevertheless, he was told by a federal agent, a federal employee, not to put it on. Well, he was aware that it was illegal advice, essentially, being made to help him move forward in his application. Well, and he acknowledged that later. Yes. And it was just advice. It wasn't a statement of authorization. I'm authorized to relieve you of this obligation. And it wasn't involuntary. I mean, he still appeared before an INS officer. He was asked to confirm that the information in his application was true and correct. He was placed under oath, and he signed that application and subscribed to those statements made. And not only that, but then he also misrepresented it again in his application for adjustment of status here in the United States, where he failed to disclose any military service at all. I mean, it was definitely not an unintentional decision. He disclosed his Yugoslavian Army- No, I don't think there was any. He doesn't indicate- Right. It was not unintentional, and he- This is serial concealment. He made a choice to not disclose it. Now, ultimately, the immigration judge found that he wasn't inadmissible, but that prevented the INS officer at the time of adjudicating the application from being able to look at the evidence and determine whether or not he had any disqualifying factors. This is 20 years ago. How did this now come to the fore? How did it come up now? I believe it came up through investigations into the various military records that were and ICE has done investigations to determine who's in the United States who may have served in these brigades and going through the military records, and so it was discovered after the fact in subsequent investigations. You mean he didn't do something else that caused an investigation? Not to my knowledge. I don't know of any other external factor other than the immigration services realizing that he- Well, but there was something pushing. Why were they looking for these? Well, because human rights violators are a priority in terms of investigating individuals who should not have been in the United States, so the Department of Homeland Security investigates cases where they have evidence that individuals served in particular military organizations that may have engaged in atrocities. This is a general search with regard to Bosnian immigrants? I mean, there's definitely investigations beyond that, but I've seen a number of VRS cases. I do believe this is an area that they specifically looked into. Mr. Sintic also focuses on the fact that the International Organization for Migration knew that everyone served in the army in Bosnia, and no doubt everyone was required to serve, but in his refugee application, Mr. Sintic actually indicates that he fled Bosnia for Serbia in 1992, which would have placed him outside of Bosnia. And expert witness Mr. Gardner testified that without that disclosure on the form, there was no reason for the INS officer to inquire further into military service, and once that was confirmed, there would not be any reason to assume that he was in fact in Bosnia serving in the army when he said he had already fled. When in fact he was serving in the 7th Battalion of the VRS in 1995 in the vicinity of Srebrenica? Correct. I'm not sure if I'm pronouncing it correctly. My understanding is Srebrenica, but I don't speak the language myself. He was not in Srebrenica to respond to the petitioner's argument that it was remote, but the atrocities weren't limited to that specific enclave. They occurred when 10,000 to 12,000 Muslim men and boys attempted to escape to government On foot. Right. Exactly. In a column. And they were intercepted in an area where a petitioner was stationed, and the 7th Battalion, the expert witness testified that it did engage in heavy combat against this column, some of which was armed and some of which was unarmed, and that they were in the area where sweeps were occurring afterwards to round these individuals up. We know that extrajudicial killings did occur in this area. We know that... Well-known ethnic cleansing. Right. No one doubts that. And the issue here is not whether or not he in fact did engage or didn't engage, but definitely that there was enough information here that it was material that he failed to disclose the service, because that inquiry should have happened. Right. It's an objective standard. The government doesn't have to prove that he would have been excluded, only that further inquiry would have been... Exactly. Exactly. Petitioner also focuses on the fact that he met the definition of the refugee, and while he may have had a well-founded fear based on the mixed marriage, that's not what's at issue here. Even if you can establish a well-founded fear, you wouldn't be entitled to refugee status if you had been inadmissible for participating in genocide or extrajudicial killing. That's a separate component. So that's sort of apples and oranges there. My earlier question is, apparently there was someone called a Senior Historian for the Human Rights Law Section as the one that prompted all this 20 years later, right? Yes. I believe Michael McQueen has been involved in a number of these cases and investigating them and testifying as an expert witness. And there's been news stories which called him overzealous, right? Yes. I'm not aware of a specific story, but I... Well his... And that's what... Going to that question, McQueen did, I guess, say that he didn't participate and was not near where the atrocities were. Did he say that, McQueen? McQueen said that he did not believe that he participated in extrajudicial killings and that the 7th Battalion did not, but he did believe that it was likely that he participated in combat against the column and that it was likely that he participated in sweeps to round up these people. Now, the immigration judge found that Mr. Ascentich's testimony was credible that he wasn't there, and that's the determination made in immigration court. But there was enough evidence in the record to show that he was in a place at a time where atrocities were occurring. But that wouldn't have made any difference because the whole theory was that he lied about it, lied about being in that unit. Right. That essentially, that inquiry needed to happen at the time his refugee application was... Not that he was involved in atrocities. No, no. That has not been appealed by DHS to the board, and we're not contesting an admissibility finding. The only thing... The focus of this case is whether or not it's material that he didn't disclose his service in an army that was certainly engaging in human rights atrocities at the time, that the government should have the opportunity to adjudicate in that application whether or not he was or wasn't an admissible, that the applicant shouldn't make that decision on their own behalf. Because if that is not disclosed, and it doesn't come to light until years later, the government's in a difficult position of trying to produce evidence in immigration court years later in a distant location and trying to figure out what would have or could have or should have happened had it been disclosed in the first instance. Here, he knew what he was doing was illegal. He didn't disclose his military service. It was willful. It was deliberate. He was under oath. He was under oath. And it was material. I mean, there was enough evidence here that it could have resulted in an admissibility finding, and that's what makes this critical. To briefly address the jurisdictional arguments as well, if there's no further questions on removability, I believe our brief speaks to it. I just want to address the two arguments raised in the reply brief. Petitioner argues that this is sort of a mixed question of fact and law. This court has rejected that as a basis for jurisdiction under 1252A2D. And even in the Ninth Circuit, which under Ramadan has accepted that, this still would not present a mixed question of factor law, because this is purely a weighing of discretionary that the agency is entitled to do, and that's unreviewable under 1252A2B. And as to the actual language of the waiver under 1227A1H, there is no explicit jurisdictional bar, but that's because this court has jurisdiction to review that. You have jurisdiction to review statutory eligibility. This is solely a question of the weighing of discretion and whether, on balance, the discretionary grant of this waiver. The immigration judge and the board found that he did not, and that is not reviewable before this court. Because that is unreviewable, and because substantial evidence supports the removability determination, the government would request that you dismiss, impart, and deny in part the petition. Thank you. Thank you, Counsel. You have two minutes, Counsel. Thank you. This court can review and has the right and the jurisdiction to review as a whole, and should look at the record as a whole to determine if the immigration judge and the board of appeals were correct, and whether there was substantial evidence, which is a requirement. And I think the Seventh Circuit has said that, and dicta on many occasions, has said it has to be clear, unequivocal, and convincing, and there has to be substantial evidence. What's interesting about the government's position is they claim that they don't know how this investigation started. Well, they do. It's in the record. If the court looks at specifically page, starting at page 3210, it's a memorandum from the U.S. Immigration and Customs Enforcement by a gentleman by the name of Mr. Richard Butler. At all times when Serbs or any ethnic group from former Yugoslavia said that the IOM officers or the INS officers induced us to lie, induced us to lie by way of omission, the government's position was, you're just making this up. It's speculative. We found, finally, from Mr. Butler's memorandum, that he states specifically, and I apologize for reading it, and I'll quote it on page 3215, many of these individuals will have been assisted in crafting this misrepresentation by local national support personnel from the International Organization of Migration office in Belgrade, Serbia. That gives us the credibility to suggest that it's true what Mr. Ossentić said. He didn't make it up and say some arbitrary IOM officer or INS officer told him to omit this fact. It's clearly identified. What the government did to try to rebut that was they brought in Mr. Todd Gardner. He said, I have no knowledge of what the training was because I wasn't involved in it in 2000. In fact, he said there was no formal training of these IOM or INS officers before that. But what's critical is they knew that every member, every male member of Bosnia were required to be in one military or the other. Mr. Ossentić did not deliberately or voluntarily omit that fact. He was induced to omit that fact. Quickly, just on the waiver, if I may be permitted, it's interesting the government states that we don't have to prove that he's inadmissible. But in every case, in every single case that they bring up on removability and on deportation, they add those facts. Why would they need Mr. McQueen other than to try to establish that this person was ineligible? What happened in this case, Mr. McQueen, under cross-examination, admitted that he was not inadmissible. He did not participate in the atrocities. I submit that the policy of the statute and the policy of the United States is not to deport victims of a war and innocent people that were induced to omit facts, but to allow them to stay in this country after suffering so much. So I would ask this Court to reverse the immigration judges as well as the Board of Appeals' decisions. Thank you, Your Honors. Thank you, counsel. The case will be taken under advisement.